UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEANETTE M. PUMPHREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18 CV 1925 ACL |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

Plaintiff Jeanette M. Pumphrey brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that Pumphrey was under a disability, but also concluded that a substance use disorder was a contributing factor material to the determination of disability because Pumphrey would not be disabled if she stopped the substance use. The ALJ therefore determined that Pumphrey was not disabled under the Social Security Act at any time from her alleged onset date through the date of her decision.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

---

[1]After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

For the following reasons, the decision of the Commissioner will be affirmed.

## I. Procedural History

Pumphrey filed her application for benefits on December 23, 2015, claiming that she became unable to work on August 30, 2011. (Tr. 156-63.) She subsequently amended her alleged onset of disability date to October 24, 2016. (Tr. 38.) Her attorney explained that this was her "sober date but for one brief relapse after that with respect to alcohol issues." *Id.* In her Disability Report, Pumphrey alleged disability due to epilepsy, seizures, blood clots in right lung, depression, and anxiety. (Tr. 203.) Pumphrey was 46 years of age on her alleged onset of disability date. (Tr. 19.) Her application was denied initially. (Tr. 78.) Pumphrey's claim was denied by an ALJ on May 2, 2018. (Tr. 9-34.) On September 14, 2018, the Appeals Council denied Pumphrey's claim for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Pumphrey argues that "the ALJ failed to properly evaluate RFC." (Doc. 12 at p. 4.)

## II. The ALJ's Determination

The ALJ first found that Pumphrey met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 14.) Pumphrey had not engaged in substantial gainful activity since her alleged onset date of October 24, 2016. *Id.* The ALJ next found that Pumphrey had the following severe impairments: history of seizure disorder; chronic alcoholic pancreatitis; peripheral polyneuropathy; irritable bowel syndrome ("IBS"); major depressive disorder ("MDD"); alcohol dependence; anxiety disorder; bipolar disorder; and history of pulmonary embolism. (Tr. 14-15.) The ALJ found that Pumphrey did not have an impairment

or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 15.)

As to Pumphrey's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that, based on all of the impairments, including the substance use disorder, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except for the following nonexertional limitations that reduce the claimant's capacity for sedentary work: can never climb ladders, ropes, or scaffolds: can no more than occasionally climb ramps or stairs; can no more than occasionally balance or stoop; must work around unprotected heights or moving mechanical parts; must never be required to operate a motor vehicle as a job duty; must never work in vibration; limited to simple, routine tasks and making simple work-related decisions; and must be able to be absent two days per month.

(Tr. 18.) The ALJ found that Pumphrey was unable to perform past relevant work, and that when considering her substance use disorder, there were no jobs that exist in significant numbers in the national economy that she could perform. (Tr. 19.)

Next, the ALJ found that, if Pumphrey stopped her substance use, she would continue to have a severe combination of impairments. (Tr. 20.) The ALJ determined that Pumphrey would have the following RFC if she stopped the substance use:

> [T]he claimant would have the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except for the following nonexertional limitations that reduce the claimant's capacity for sedentary work: can never climb ladders, ropes, or scaffolds: can no more than occasionally climb ramps or stairs; can no more than occasionally balance or stoop; must work around unprotected heights or moving mechanical parts; must never be required to operate a motor vehicle as a job duty; must never work in vibration; and limited to simple, routine tasks and making simple work-related decisions.

(Tr. 21.) The ALJ found that Pumphrey would continue to be unable to perform past relevant

work if she stopped the substance use, but there would be other jobs existing in significant numbers in the national economy that she could perform, such as addresser, document preparer, and charge account clerk. (Tr. 27.)

The ALJ found that substance use was a contributing factor material to the determination of disability because Pumphrey would not be disabled if she stopped the substance use. (Tr. 28.) As a result, she concluded that Pumphrey was not under a disability, as defined in the Social Security Act, at any time from the alleged onset date through the date of her decision. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on December 23, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

*Id.*

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a

whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal

quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the

Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

Additionally, "'[a]n individual shall not be considered disabled for purposes of [SSI] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor to the Commissioner's determination that the individual is disabled." *Kluesner v. Astrue,* 607 F.3d

533, 537 (8th Cir. 2010) (quoting 42 U.S.C. § 423(d)(2)(C) and noting that 42 U.S.C. § 1382(c)(a)(3)(J) has a similar provision for Title XVI). The claimant meets this burden if the ALJ "is unable to determine whether substance abuse disorders are a contributing factor to the claimant's otherwise-acknowledged disability...." *Id.* (quoting *Brueggemann v. Barnhart,* 348 F.3d 689, 693 (8th Cir. 2003)).

### IV. Discussion

Pumphrey argues that the ALJ failed to properly evaluate her RFC. Specifically, she contends that the ALJ's determination that she would not miss any work if she abstained from alcohol is not supported by substantial evidence.

A claimant's RFC is what she can do despite her limitations. *Dunahoo v. Apfel,* 241 F.3d 1033, 1039 (8th Cir. 2001). The claimant has the burden to establish her RFC. *Eichelberger v. Barnhart,* 390 F.3d 584, 591 (8th Cir. 2004). The ALJ determines a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005); *Eichelberger,* 390 F.3d at 591; 20 C.F.R. § 404.1545(a). The ALJ is "required to consider at least some supporting evidence from a [medical professional]" and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace. *Hutsell v. Massanari,* 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. *Id.*

The ALJ found that, without substance use, Pumphrey would have the same RFC as with substance use, except that she would not have any monthly work absences compared to two absences a month with substance use.

When determining whether a substance abuse disorder is a contributing factor "[t]he key factor" is whether the claimant would still be found disabled if she stopped using the drugs or alcohol. 20 C.F.R. § 416.935(b)(1). When making this determination, the claimant's current mental and physical limitations are evaluated to assess whether they would remain if the claimant stopped using drugs or alcohol and, if so, whether the remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2). "When a claimant is actively abusing [alcohol], this inquiry is necessarily hypothetical, and thus more difficult than if the claimant had stopped." *Kluesner,* 607 F.3d at 537; *accord Pettit v. Apfel,* 218 F.3d 901, 903 (8th Cir. 2000). The relevant question is not only if the claimant's substance abuse was in remission at the time of the hearing, but is whether it was active during much of the relevant period. *Kluesner,* 607 F.3d at 538; *Vester v. Barnhart,* 416 F.3d 886, 890 (8th Cir. 2005).

"[The claimant] carries the burden of proving her substance abuse is not a contributing factor material to the claimed disability." *Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000)); *accord Fastner v. Barnhart,* 324 F.3d 981, 984 (8th Cir. 2003). On the other hand, if "[t]he ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow." *Brueggemann,* 348 F.3d at 693.

Pumphrey characterizes the dispositive issue in this case as "whether Plaintiff would be expected to miss more than twelve (12) days of work per year secondary to her impairments or

treatment, excluding alcohol." (Doc. 12 at p. 4.) Pumphrey accurately notes that the vocational expert testified that an individual who misses two days of work per month could not maintain competitive employment. (Tr. 62.)

Pumphrey concedes a history of alcohol abuse, but claims that she stopped drinking from November 2016 until June 2017, when she relapsed. (Doc. 12 at p. 6.) She states that she thereafter remained sober from July 2017 to the present. *Id.* Pumphrey argues that by the time she stopped drinking alcohol, she had damaged her pancreas to the point that she continues to experience chronic abdominal pain, pseudocysts on the pancreatic duct and groove pancreatitis, which require frequent emergency room visits and hospitalizations for pain control and treatment, all causing missed days of work. Pumphrey indicates that she would have missed work for emergency room visits alone as follows since she stopped drinking: one day in November 2016, at least three days in January 2017, one day in February 2017, one day in March 2017, and two days in May 2017, for a total of eight days of work in a seven-month period. *Id.* at 7. She claims that she would have missed work on additional days due to pain.

As an initial matter, the Court notes that Pumphrey's insured status is relevant in this case. Pumphrey alleged an onset of disability date of October 24, 2016. Her insured status expired on December 31, 2016. To be entitled to benefits under Title II, Pumphrey must demonstrate she was disabled prior to December 31, 2016. *See* 20 C.F.R. § 404.130. Thus, the period under consideration in this case is from October 24, 2016, through December 31, 2016.

"When an individual is no longer insured for Title II disability purposes, [the Court] will only consider her medical condition as of the date [she] was last insured." *Davidson v. Astrue,* 501 F.3d 987, 989 (8th Cir. 2007). "Evidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits may be rewarded.'"

*Cox v. Barnhart*, 471 F.3d 902, 907 (quoting *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998)). But, the evidence from outside the period cannot serve as the only support for the disability claim. *Id.* The ALJ should use the date alleged by the individual if it is consistent with all of the evidence available. *Karlix v. Barnhart*, 457 F.3d 742, 747 (8th Cir. 2006).

In her decision, the ALJ first stated the medical evidence of record reveals frequent emergency room visits and regular inpatient hospitalizations due to alcoholic-related pancreatitis with abdominal pain or seizures beginning prior to her October 2016 alleged onset of disability date. (Tr. 18.) The ALJ noted Pumphrey admitted that prior to October 2016, her pancreatic and abdominal pain was due to her alcohol use. (Tr. 22.) Specifically, she testified that she "realized fairly quickly that with my pancreatitis issue that if I were to drink I had an immediate onset." *Id.* The ALJ stated that the treatment notes during that period reflect either intoxication with her treatment or recent alcohol use, and that most of her treatment providers indicated that the problems were caused by alcohol usage. (Tr. 22.) The ALJ pointed out that the record also reflects that Pumphrey continued to present to the emergency room and experience episodes of abdominal pain symptoms exacerbation after October 2016, the date Pumphrey testified that she stopped drinking and started attending Alcoholics Anonymous meetings. (Tr. 22, 41.) The ALJ noted that Pumphrey was hospitalized in October 2016, and was seen in the emergency room three times in January 2017. (Tr. 18-19.)

The ALJ, however, found that the record did not support Pumphrey's representation that she stopped drinking in October 2016, and instead reflects continued alcohol usage after this date. (Tr. 23.) For example, at a January 23, 2017 office visit with gastroenterologist Koushik Kumar Das, M.D., Pumphrey reported that she had been sober for five months. (Tr. 1627.) Dr.

Das described a "candid conversation" he had with Pumphrey regarding her alcohol use as follows:

> I showed her discharge summaries from her October admission to Progress West clearly documenting that she was drinking vodka heavily at that time. Seeing this evidence, she then said that this was the time of her final drink. I then proceeded to show her alcohol level from mid November that was positive. Seeing this evidence, she then stated that she was drinking through November. Her partner who was in the office with her today confirms that she had been drinking through September, October, November and had stopped only essentially at the beginning of December. If this is to believed, then she has only been sober for approximately 4-6 weeks and the vast majority of her ER visits and hospitalizations in the context of ongoing alcohol abuse.

*Id.* Dr. Das informed Pumphrey that there was "no road to recover from this degree of pancreatitis without complete and total abstinence from alcohol." (Tr. 1633.) He emphasized to Pumphrey and her partner that "any amount of alcohol, even a trivial amount of alcohol, could idiosyncratically cause severe worsening of her symptoms." *Id.*

The ALJ stated that the record reflects a subsequent reduction in the frequency of Pumphrey's abdominal pain complaints, with only three emergency room visits and no inpatient hospitalizations from February 2017 through May 2017. (Tr. 23.) Pumphrey saw her primary care provider, Aubra A. Houchin, D.O., on February 6, 2017, at which time she reported her abdominal pain and bloating had significantly improved. (Tr. 1089.) She had been abstaining from alcohol and had decreased her narcotic pain medication use "dramatically." *Id.* Pumphrey presented to the emergency room with complaints of abdominal pain on February 27, 2017. (Tr. 1366.) She was diagnosed with acute pancreatitis, treated with medication, and released the same day. (Tr. 1375.) On March 11, 2017, Pumphrey returned to the emergency room with complaints of abdominal pain, vomiting, and dehydration. (Tr. 1379.) She was given IV fluids and pain medication. (Tr. 1388.) A CT scan of the abdomen was recommended, but Pumphrey refused and left against medical advice. *Id.* Her diagnosis was

"nonspecific abdominal pain." *Id.* Pumphrey returned to the emergency room on May 21, 2017 with complaints of lower abdominal pain and nausea. (Tr. 1392.) Pumphrey was diagnosed with abdominal pain, and was discharged in stable condition after being given IV fluids and pain medication. (Tr. 1401.) She returned the following day, reporting the pain medication had worn off. (Tr. 1404.) Pumphrey was given more medication and was released. (Tr. 1407.)

The ALJ observed that Pumphrey's emergency room visits increased significantly in June 2017 and July 2017, during which time she was drinking alcohol. (Tr. 23.) For example, on June 5, 2017, Pumphrey reported that she had "basically been drunk the whole weekend," and had been drinking vodka in the morning before she left for the emergency room for treatment of abdominal pain. (Tr. 1419.) Pumphrey returned to the emergency room on June 19, 2017, with complaints of abdominal pain and vomiting. (Tr. 1438.) Although she reported she quit drinking nine months prior, testing revealed a high concentration of alcohol in her bloodstream. (Tr. 1442.) Pumphrey returned two days later with the same complaints. (Tr. 1449.) She was admitted for a day and treated with medication. (Tr. 1460.) Pumphrey returned a few hours after being discharged, complaining that she did not think her prescription of Vicodin was adequate, even though she had not yet gotten it filled. (Tr. 1462.) On a July 7, 2017, emergency room visit, Pumphrey admitted that she had been binge drinking since July 3, and that her drinking was "probably what has brought on her pain." (Tr. 1481.) She was admitted at St. Luke's Hospital on this date, and was discharged on July 10, 2017. (Tr. 1714.) Pumphrey was hospitalized again from July 15, 2017 to July 16, 2017, for increasing abdominal pain and alcohol withdrawal. (Tr. 1756, 1306.) She presented to the emergency room on July 23, 2017, with complaints of increased abdominal symptoms after eating salsa. (Tr. 1773.)

Pumphrey was treated for abdominal pain in the emergency room on July 28, 2017, and reported that she had not been drinking and was following a clear diet. (Tr. 1498.) On July 30, 2017, Pumphrey returned to the hospital with symptoms of pancreatitis. (Tr. 1687.) She reported that she last drank alcohol on July 17, 2017. *Id.* Pumphrey was diagnosed with constipation, alcohol dependence, and pancreatitis, and was advised to stop drinking. (Tr. 1691-92.)

The ALJ stated that, after July 2017, the record does not reflect any significant alcohol use and Pumphrey's emergency room treatment again decreased. (Tr. 23.) Pumphrey sought emergency room treatment on September 14, 2017, for pain following placement of pancreatic stents. (Tr. 23, 1507.) She was admitted from October 20, 2017, to October 24, 2017, for abdominal pain related to her pancreatitis and was treated for a pancreatic cyst. (Tr. 1205.) Pumphrey was admitted from December 11, 2017 to December 14, 2017, for acute pancreatitis with fluid around the pancreatic duct stent. (Tr. 2060.) The pancreatic duct stents were removed and replaced. *Id.* Pumphrey received medical treatment for abdominal pain while on a cruise in January 2018. (Tr. 2077.)

The ALJ concluded that Pumphrey's most extreme symptoms occur during periods when she is using alcohol. (Tr. 23.) She acknowledged that Pumphrey continues to experience abdominal pain and requires ongoing treatment for her pancreatic problems when she is not drinking, yet found that the record "does not support a symptoms intensity or frequency that would support limitations beyond those in the determined residual functional capacity." *Id.*

As noted above, Pumphrey has the burden of proving that alcohol abuse "is not a contributing factor material to [her] claimed disability." *Estes,* 275 F.3d at 725. The medical records do not carry this burden given the extensive references to Pumphrey's continued drinking both during and after the relevant period. Pumphrey's singular argument is that the

ALJ's RFC determination is erroneous because her medical condition resulted in monthly work absences even after she stopped drinking in October 2016. The record discussed above, however, reveals that she did not stop drinking in October 2016. Rather, she continued drinking until approximately mid-December 2016. As such, Pumphrey was using alcohol during almost the entire relevant period of October 24, 2016 through December 31, 2016. The medical evidence and Pumphrey's own testimony establish that alcohol use greatly exacerbates her pancreatitis symptoms.

This is further demonstrated by the evidence dated after the relevant period, which revealed a significant reduction in the frequency of treatment for abdominal complaints from February to May 2017 when Pumphrey was abstaining from alcohol, followed by an exacerbation in symptoms and treatment when she started drinking again in June and July 2017. The ALJ properly considered evidence after the date Pumphrey was last insured to better elucidate her condition during the relevant period. The medical evidence of record supports the ALJ's finding that Pumphrey's symptoms would not result in regular monthly work absences during the relevant period if she stopped using alcohol.

The ALJ's determination that Pumphrey's substance use disorder is a contributing factor material to the determination of disability is supported by substantial evidence on the record as a whole. *See Baker v. Colvin,* 2013 WL 5770600, at *6 (E.D. Mo. Oct. 24, 2013) (affirming ALJ's decision that claimant would not be disabled but for substance abuse); *Shaw v. Astrue,* 2010 WL 493832, at *6 (W.D. Ark. Feb. 5, 2010) ("Notwithstanding the Plaintiff repeated protest throughout her records that she is not an alcoholic the record is clear she abuses alcohol on a regular basis and had done so for many years. Untying the Gordian Knot of Alcoholism and Mental Impairments is compounded when, as here, the alcoholic abuse continues through the

evaluation period."). In concluding that Pumphrey was not disabled prior to the expiration of her insured status, the ALJ's relied upon the vocational expert's testimony and found "that, if the claimant stopped the substance use, [Pumphrey] would be capable of making a successful adjustment to work that exists in significant numbers in the national economy." (Tr. 28.)

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

s/Abbie Crites-Leoni<br>
ABBIE CRITES-LEONI<br>
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of February, 2020.